## HERBERT v. PAYNE, Agent.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1922. Rehearing Denied April 30, 1923.)

No. 5969.

1. **Limitation of actions ⬦125—Substitution of federal agent for railroad held not mere continuation of original suit.**

In view of Act Aug. 29, 1916 (Comp. St. § 1974a), Act March 21, 1918 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p), and Transportation Act Feb. 28, 1920, as to federal operation of railways, and proclamations, orders, and proceedings thereunder, *held* that, where shipper filed suit for damage to stock shipment against a railway on May 17, 1920, at which time the proper party defendant was the Director General of Railroads, the subsequent substitution of the Director General as defendant was, as to him, the institution of a new case as respects limitations.

2. **Railroads ⬦5½, New, vol. 6A Key-No. Series—Limitations in contract with railroad not available to Director General.**

Where shipper's live stock shipment, contract, containing contract limitation of two years as to damage suits, was made with a railroad in May, 1918, at which time the railroad was under federal control, and the Director General did not require, before transporting, new contracts limiting the time within which suit could be brought, but proceeded to transport as a common carrier the property of the shipper, so that the contract made with the railroad was not the basis of the parties' mutual rights, the Director General could not claim the benefit of the contractual limitation, but his liability for damages to the stock shipped was governed by the statute of limitations.

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action by Guy H. Herbert against John Barton Payne, Agent, etc. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

R. D. Bowers, of Roswell, N. M., for plaintiff in error.

E. C. Iden, of Albuquerque, N. M. (J. M. Hervey and W. C. Reid, both of Roswell, N. M., and Gardiner Lathrop and James L. Coleman, both of Chicago, Ill., on the brief), for defendant in error.

Before LEWIS and KENYON, Circuit Judges, and YOUMANS, District Judge.

KENYON, Circuit Judge. Plaintiff in error filed suit in the district court of Chaves county, N. M., May 17, 1920, claiming damages against the Atchison, Topeka & Santa Fé Railway Company by reason of alleged negligence in the transportation of certain cattle in the month of May, 1918. Part of the claim arises by virtue of assignment by one Hugh Bostick to plaintiff in error of all his right, title, and interest in and to damages alleged to be sustained by him through a shipment at the same time. Said cattle were to be transported from New Mexico to Marionville, Mo. Contracts were entered into by plaintiff in error and by S. H. Bostick with the Atchison, Topeka & Santa Fé Railway Company and connecting carriers, signed "The

Atchison, Topeka & Santa Fé Railway Company and Connecting Carriers (Severally), by E. S. Bowen, Its Agent." The contract made by plaintiff in error, and also the contract made by his assignor, Bostick, contain this provision:

"Suits for the recovery of damages for loss, damage, or delay shall be instituted only within two years after delivery of the property, or in case of failure to make delivery then within two years after reasonable time for delivery has elapsed."

This action was commenced 1 year, 11 months and 17 days after it accrued. Service of summons was made on the Atchison, Topeka & Santa Fé Railway Company through B. F. Rose, agent. The Atchison, Topeka & Santa Fé Railway Company filed the proper proceedings to transfer the case to the District Court of the United States for the District of New Mexico, and the same was so transferred. The railway company demurred to plaintiff in error's complaint on the ground that it showed no cause of action against the railway company, for the reason that it was within the judicial knowledge of the court that, prior to the institution of the suit and prior to the infliction of the damages complained of, the President of the United States had assumed control of the railroad and transportation system of the, Atchison, Topeka & Santa Fé Railway Company. The demurrer was sustained. Plaintiff in error then moved for leave to file an amended complaint substituting the Director General of Railroads, John Barton Payne, as defendant, instead of the Atchison, Topeka & Santa Fé Railway Company. The court permitted this to be done. The Director General of Railroads then demurred to the amended complaint on the ground that it appeared upon the face of the complaint that it had not been filed within the two-year limitation period for the bringing of suits as provided by the contracts. The court sustained the demurrer, and plaintiff in error brings the case here to review the action of the District Court.

## I.

[1] The issue under the assignments of error relates entirely to the question of the limitation of time within which suit may be brought. Plaintiff in error contends that the process served brought the Director General into court on the original complaint, even though he was not designated by name therein; that the amendment was not equivalent to the bringing of a new action, and that it related back to the filing of the original complaint, and therefore the contractual limitation could not be invoked. Secondly, plaintiff in error claims that the court erred in sustaining the demurrer and dismissing the action, for the reason that the same was brought within the limitation prescribed by section 206 of the Transportation Act of 1920 (41 Stat. 456), and hence it was immaterial whether or not the amendment amounted to the bringing of a new suit.

It may be well to refer to the general situation brought about by the taking over of the operation of the railroads of the country by the President. On August 29, 1916, Congress gave the President this power in times of war as a part of the necessary war power. 39 Stats.

U. S. 645 (Comp. St. § 1974a). On December 26, 1917, the President exercised this power, assuming possession of the railroads at 12 o'clock noon of the 28th day of December, 1917. By the proclamation of the President a Director General was appointed, with authority to take possession and control of the systems of railroads within continental United States. These systems were taken over, subject to existing statutes and orders of the Interstate Commerce Commission. It was by said proclamation provided as follows:

"But any orders, general or special, hereafter made by said Director, shall have paramount authority and be obeyed as such."

On March 21, 1918, Congress passed a law entitled:

"An act to provide for the operation of transportation systems while under federal control, for the just compensation of their owners, and for other purposes." Chapter 25, 40 Stat. 451 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p).

At the time of the shipments giving rise to the cause of action in this case, as well as at the time of commencing suit, the railroads were under federal control, and the control and operation of the Atchison, Topeka & Santa Fé Railway Company was in the United States government under the legislation of Congress and the act and proclamation of the President by virtue thereof. General Order No. 50 was issued October 28, 1918. We do not think it necessary to set it out in its entirety. It was signed by W. G. McAdoo, Director General of Railroads, and among other things provided:

"It is therefore ordered, that actions at law, suits in equity, and proceedings in admiralty hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad or system of transportation by the Director General of Railroads, which action, suit, or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads, and not otherwise: Provided, however, that this order shall not apply to actions, suits, or proceedings for the recovery of fines, penalties and forfeitures.

"Subject to the provisions of General Orders numbered 18, 18–A and 26, heretofore issued by the Director General of Railroads, service of process in any such action, suit or proceeding may be made upon operating officials operating for the Director General of Railroads, the railroad or other carrier in respect of which the cause of action arises in the same way as service was heretofore made upon like operating officials for such railroad or other carrier company.

"The pleadings in all such actions at law, suits in equity, or proceedings in admiralty, now pending against any carrier company for a cause of action arising since December 31, 1917, based upon a cause of action arising from or out of the operation of any railroad or other carrier, may on application be amended by substituting the Director General of Railroads for the carrier company as party defendant and dismissing the company therefrom."

Section 206 of the Transportation Act of February 28, 1920, 41 Stats. at Large, 456, provides that actions at law based on causes of action arising during federal control be brought against an agent designated by the President of the United States for such purpose, "within the periods of limitation now prescribed by state or federal statutes

but not later than two years from the date of the passage of this act."
On March 11, 1920, the President designated Walker D. Hines Director General of Railroads and his successor in office as such agent. On May 14, 1920, the President designated John Barton Payne Director General of Railroads and his successor in office as such agent.

We have referred to these various statutes in order to make clear the general situation before the cause of action arose, at the time, and subsequent thereto. The material facts in this case are these: The cause of action arose in May, 1918. The Atchison, Topeka & Santa Fé Railway Company had been taken over by the President in December, 1917. The act of Congress known as the Federal Control Act was passed in March, 1918. This was all before the cause of action accrued. Order No. 50 of the Director General was promulgated October 28, 1918, said order directing that suit should be brought against the Director General of Railroads and not otherwise. This order was issued one year and nearly seven months before the time suit was brought.

Under the decisions of the Supreme Court of the United States there is no escape from the conclusion that at the time the action accrued, as well as at the time it was commenced, the Atchison, Topeka & Santa Fé Railway Company was a separate and distinct entity from that of the Director General of Railroads; that the Director General was the proper party to sue as representative of the government under General Order No. 50, hereinbefore referred to; and that the railway company was not a proper party defendant. Northern Pacific Railway Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897; Missouri Pacific Railway Co. et al. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. Ed. 1087; North Carolina R. R. Co. v. Lee, Admx., 260 U. S. 16, 43 Sup. Ct. 2, 67 L. Ed. ——, decided October term, 1922, and Hines v. Dahn (C. C. A.) 267 Fed. 105, seem to settle this question. So we are confronted at the outset with a situation where a suit is brought against a railway company when it should have been against another defendant who represented the United States, the real party in interest. There was, in fact, no cause of action against the railway company. The same was against the Director General. When the Director General under the permission of the court was substituted as sole defendant in place of the railway company the case was then as to him a new case. The injury for which damage was claimed was the same, but the party responsible for the alleged wrong was a different party from the one originally selected by plaintiff in error as the one against whom his claim should be prosecuted. It must be true that when a party is first brought into a case and given opportunity to make defense the case is commenced then as to him, and if he is the only defendant it is the commencement of a new case. Miller v. McIntyre, 31 U. S. 63, 8 L. Ed. 320 (3 Pet.) 61; United States v. Martinez, 195 U. S. 469, 472, 25 Sup. Ct. 80, 49 L. Ed. 282; Portland Gold Min. Co. v. Stratton's Independence, Ltd. (D. C.) 196 Fed. 714, 717; 1 Encl. of Pleading and Practice, 535. At the time therefore, of the substitution of the Director General for the railway company the case stood as if it were a case just brought

against the Director General for failure to perform his duty as a carrier. Under these circumstances had there been no limitation of contract involved there would have been no question raised as to the statute of limitations because the action would have been brought in ample time under the statute of limitations of New Mexico. If the Director General had the right to claim the limitation in the contracts made with the Atchison, Topeka & Santa Fé Railway Company as to the time in which suit should be brought, then the court was correct in sustaining the demurrer. If, however, the Director General as defendant had no such right, the court erred in its decision. To the vital and determinative question therefore of the right of the Director General to claim the limitation in the contracts between the Atchison, Topeka & Santa Fé Railway Company and the shippers, we direct our attention.

## II.

[2] Both contracts contain this provision:

"Sixth. Suits for the recovery of damages for loss, damage or delay shall be instituted only within two years after delivery of the property, or in case of failure to make delivery then within two years after reasonable time for delivery has elapsed."

Such limitation is binding as to the parties thereto. Mo., Kansas & Texas Ry. v. Harriman, 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690; Leigh Ellis & Co. v. Payne, Agent (D. C.) 274 Fed. 443; Tex. & Pac. Ry. Co. et al. v. Leatherwood, 250 U. S. 478, 39 Sup. Ct. 517, 63 L. Ed. 1096; Leigh Ellis & Co. v. Davis, Agent (C. C. A.) 276 Fed. 400. These contracts were made with the Atchison, Topeka & Santa Fé Railway Company. It did not have possession and control of its railroad property used for transportation, but the same was in the possession of and being operated by the Director General of Railroads. The Director General, as the agent of the United States, the real party in interest, did not require new contracts, as he might have done before transporting, limiting the time in which suit could be brought, but proceeded to transport as a common carrier the property of plaintiff in error, and of the other shipper, Bostick. The contracts made with the shippers were not the basis of liability. The claim is urged by defendant in error throughout the argument that the Director General and the railway company were distinct and separate entities; that the one had nothing to do with the other. That they were separate and distinct entities under the decisions of the Supreme Court is without question. How, then, does the Director General secure under these contracts made with a separate and distinct entity any right to claim the limitation of time for suit provided therein? Why is he not subject to the same limitation as if no contracts existed? We know of nothing in the general acts taking over the railroads which would confer upon the Director General the right to claim a limitation in a contract made with an entirely separate and distinct party not his agent. If the Atchison, Topeka & Santa Fé Railway Company made the contracts as agent of the Director General then it could not be claimed that the substitution of the Director General as defendant con-

stituted a new cause of action. If there is no connection whatever between them and they are separate and distinct entities, then the Director General cannot claim the benefit of limitation in the contracts made with the shippers.

We are not unmindful of the concession of counsel for plaintiff in error on page 11 of his brief that the government was "entitled to all the rights of the carrier growing out of such contract. Among the rights so inuring to it was the limitation of two years for the bringing of an action against it." This court, however, is not bound by that concession and does not accept the same as correct. It illustrates, we think, the fundamental error throughout the case and in the decision of the court, namely, that the contract was the basis of liability, when in fact such basis is the failure of the Director General as a common carrier to transport with reasonable care the property intrusted to him. The government has permitted its citizens to sue for injuries occasioned by negligence in the operation of the railroads by the Director General. While it has, of course, when suit is brought, the right to impose through its representative a technical defense, such as the statute of limitations, it should be clear that such defense is applicable before it be permitted to destroy the right of the citizen to a hearing in the courts as to the justice of his complaint.

Holding, as we do, that under the record as presented there is nothing to show the right of the Director General to claim the limitation as to time of suit provided in the contracts between the shippers and the Railway Company, we must conclude that the judgment of the trial court in sustaining the demurrer was error, and the same is reversed, and the case remanded.