## UNITED STATES v. JOHN GALLAGHER CO.

### No. 6926.

Circuit Court of Appeals, Sixth Circuit.

April 8, 1936.

Joseph M. Jones, of Washington, D. C. (Frank J. Wideman and Sewall Key, both of Washington, D. C., and E. B. Freed and Everett L. Foote, both of Cleveland, Ohio, on the brief), for appellant.

J. W. Ford, of Youngstown, Ohio (Manchester, Ford, Bennett & Powers, of Youngstown, Ohio, on the brief) for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

MOORMAN, Circuit Judge.

On March 12, 1924, the Commissioner of Internal Revenue assessed an additional tax of $5,838.12 against the appellee for the year 1917. The period of limitation for collecting the tax, as extended by a waiver which the appellee had executed, expired April 1, 1924. On May 5, 1924, the Commissioner signed a final schedule of refunds and credits authorizing the disbursing clerk of the Treasury Department to credit $5,838.12 of an overpayment on appellee's 1918 taxes to the additional tax of 1917. This was a collection of the 1917 tax (Graham & Foster v. Goodcell, 282 U. S. 409, 424, 51 S.Ct. 186, 192, 75 L.Ed. 415; United States v. Swift & Co., 282 U. S. 468, 51 S.Ct. 202, 75 L.Ed. 464) after the right to collect it was barred (Bowers v. New York & Albany Co., 273 U.S. 346, 47 S.Ct. 389, 71 L.Ed. 676). The appellee, asserting that the tax was wrongfully collected, filed a claim for refund thereof, which was denied, and thereupon brought this suit and recovered judgment for it as an overpayment of 1917 taxes.

The government complains of the judgment on the ground that the court erred: (1) In not holding that the act of the Commissioner in making the credit was of no effect and did not constitute an overpayment of 1917 taxes; and (2) in not holding that the appellee was estopped by its conduct prior to the falling of the bar to collection thereafter to assert claim to the tax.

The argument on the first point is based on sections 607 [26 U.S.C.A. § 1670 (a) (2)] and 609 (a) [26 U.S.C.A., § 1675 (a)] of the Revenue Act of 1928 quoted in the margin.[1] It is said that the tax, 'had it been paid by the taxpayer, would be considered an overpayment under section 607, but that the crediting to it of an overpayment of 1918 taxes is to be deemed void under section 609 (a), and, the credit being void, the amount thereof cannot be said to be a recoverable overpayment. Reliance is placed on Parks & Woolson Mach. Co.

---

[1] § 607. "Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim."

§ 609 (a). "Any credit against a liability in respect of any taxable year shall be void if any payment in respect of such liability would be considered an overpayment under section 607."

v. United States (Ct.Cl.) 58 F.(2d) 868, and Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 328, 78 L.Ed. 647. The Parks & Woolson Co. Case, a decision by the Court of Claims, supports the contention, but the writer of the opinion in that case in a dissenting opinion in a later case (First Nat. Bank of Beaver Falls v. United States (Ct.Cl.) 8 F.Supp. 484, 488) reached the conclusion that the decision in Parks & Woolson was erroneous. We agree with that conclusion. The Stearns Case did not interpret sections 607 and 609 (a) with reference to facts similar to those here involved. The aim of section 609 (a), as the court there viewed it, is "to invalidate such a credit if made by the Commissioner of his own motion without the taxpayer's approval or with approval falling short of inducement or request." This is not to say that the wrongful crediting of a fund belonging to a taxpayer in the possession of the Treasury to a deficiency tax assessed against the taxpayer, after the period of limitation for collecting the deficiency tax has expired, is a nullity and is not to be treated as an overpayment of taxes for the year in which the deficiency was assessed. Such an act, as said in Graham & Foster v. Goodcell, supra, is to "be regarded as an erroneous collection" of the tax. Section 607 gives a taxpayer the right to reclaim as an overpayment a tax assessed or paid after the period provided by statute for the assessment or payment thereof has expired. Section 609 (a) was designed, it seems to us, to give the same right in the case of a payment by credit, not to prevent the taxpayer from recovering the amount of the credit as an overpayment. The tax here in controversy was collected, was paid, by the credit. To hold that it was not an "overpayment" within the meaning of section 607 would be contrary to the spirit and purpose of the statute.

The contention that appellee is estopped from asserting claim to the tax was not made in the court below. The appellee insists that it is not available on the record here. We pass the point and decide the question on its merits. The facts on which the government relies are that at a conference between representatives of the Commissioner and the taxpayer on June 4, 1923, it was agreed that there was an additional tax due for the year 1917, and an overassessment for 1918, following which the Deputy Commissioner wrote the appellee a letter showing the amount of each, on the basis of which the appellee was given a check for the difference, which it accepted without protest. This occurred within the period of limitation for the collection of the additional tax. The letter notified the appellee that it might request a conference with the income tax unit having the matter in charge at any time within the period prescribed for the filing of an appeal, and if the unit was unable to concede the points raised by the taxpayer, the matter would be transmitted, with the recommendations of the unit, to such agency as the Commissioner might designate, for final consideration. The government contends that this letter indicated a purpose on the part of the Commissioner to apply the overpayment for 1918 to the additional tax assessed for the preceding year, and that, by failing to protest against such course until after the period of limitation for collecting the 1917 tax had run, the appellee has estopped itself from asserting claim to the amount applied thereto as a credit, since had it objected to such application upon its receipt of the letter the government could have collected the tax prior to the expiration of the period of limitation.

The only thing shown in the letter with reference to any agreement between the parties is that the appellee and a representative of the Commissioner agreed upon a basis for the determination of tax claims for the two years. Nothing is shown to indicate that the appellee requested or agreed to an application of the overpayment for 1918 to its 1917 taxes. The government had more than eight months after the letter was written in which to assess and collect the additional tax for 1917. There is no evidence of a misrepresentation or concealment of any material fact by the taxpayer upon which the government relied in delaying the assessment or collection. The refund of the balance of the overpayment for 1918 was not made until June 12, 1924, more than a month after the credit was made. The acceptance of the refund obviously did not cause the government to delay the collection of the 1917 tax. On the other hand, it is fair to assume that the Treasury officials voluntarily delayed the collection under a misconception of their legal rights. Prior to the decision in United States v. Swift & Co., supra, rendered February 21, 1927, the Treasury Department had proceeded in its practice upon

370

the theory that the signing of a schedule by the Commissioner such as was signed in this case on March 16, 1924, made the credit therein applied effective as of the date the schedule was signed. The Swift & Co. Case decided that a credit did not become effective until the signing of a final schedule similar to the one here executed on May 5. Again the Treasury Department was seemingly of opinion, at the time the letter was written, that there was no time limitation on the right of the government to collect a legally assessed tax by distraint. Bowers v. New York & Albany Co., supra, decided February 21, 1927, held that the statute of limitation of five years barred collection by distraint as well as by other means. It would seem fair to assume, therefore, nothing to the contrary appearing, that the delay in assessing and collecting the tax was caused by a mistaken belief on the part of the Treasury officials as to the effect of the signing of a preliminary schedule such as that signed on March 16, and the lack of any limitation in time for the collection of a timely assessment.

The judgment is affirmed.